# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re:

**Gary A. Porrett and**
**Jennifer S. Porrett,**

                 **Debtors.**

**Bankruptcy Case**
**No. 09-03881-JDP**

_____

## MEMORANDUM OF DECISION
_____

Appearances:

       Patrick Geile, FOLEY FREEMAN, PLLC, Meridian, Idaho, Attorney
for Debtors.

       Noah Hillen, Boise, Idaho, Chapter 7 Trustee.

### *Introduction*

In this chapter 7[1] case, the Court addresses an issue about the scope

---

    [1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all references to "Rules" are to the
Federal Rules of Bankruptcy Procedure, 1001-9037.

MEMORANDUM OF DECISION – 1

of property included in the bankruptcy estate.

Debtors Gary Alan Porrett and Jennifer Sue Porrett ("Debtors"),
together with trustee Noah Hillen ("Trustee"), filed a Joint Motion for
Determination of Property of the Bankruptcy Estate ("the Joint Motion").
Dkt. No. 59.   In the Joint Motion,[2] the parties asked the Court to settle their
disagreement over a knotty issue: whether an $8,120.23 payment from
Wells Fargo Bank, now held by Trustee, is property of the bankruptcy
estate to be distributed to creditors, or instead, should be released to
Debtors.  To support their positions, the parties submitted a stipulation of
facts, as well as briefs.  Dkt. Nos. 60, 63, 64, 65.   The Court conducted a
hearing on the Joint Motion on February 23, 2016 at which Debtors'
counsel and Trustee offered oral arguments.  Dkt. No. 66.   Having taken
the issues under advisement, and having duly considered the stipulated

---

[2] While a request for a declaratory judgment concerning whether an item
or asset is property of the estate would normally require an adversary
proceeding, *see* Rule 7001(9), parties may waive their right to an adversary
proceeding.  *Cogliano v. Anderson (In re Cogliano)*, 355 B.R. 792, 806 (9th Cir. BAP
2006) ("When the question of whether property is part of th estate is in
controversy, Rule 7001(2) requires an adversary proceeding, *absent waiver or
harmless error. . . .* ") (emphasis added).

MEMORANDUM OF DECISION – 2

facts, briefs, and arguments of counsel, as well as the applicable law, this

Memorandum constitutes the Court's findings, conclusions, and explains

the reasons for its disposition of the Joint Motion.  *See* Rules 9014, 7052.

## *Facts*[3]

Debtors obtained a home mortgage loan from Wells Fargo on June

25, 2007.  On December 9, 2009, Debtors filed the chapter 7 petition

commencing this case.  On June 10, 2010, Wells Fargo filed a motion for

relief from the automatic stay to foreclose on Debtors' home, alleging that

Debtors were delinquent in making payments on the loan; that Debtors

had not provided Wells Fargo adequate protection of its interest in the

home; and further, that Debtors' intention was to surrender the home.

Dkt. No. 21.  On July 2, 2010, without objection from Debtors or the former

chapter 7 trustee, the Court entered an order for stay relief allowing Wells

---

[3] In addition to the Joint Statement of Undisputed Facts and Stipulation
Regarding Admission of Exhibits, Dkt. No. 60, the Court has referenced its own
docket in this bankruptcy case.

MEMORANDUM OF DECISION – 3

Fargo to foreclose.   Dkt. No. 26.[4]

On February 17, 2011, Debtors' bankruptcy case was closed and the

trustee was discharged.  Dkt. No 41.

A few months later, on July 20, 2011, in proceedings pending before

the Board of Governors of the Federal Reserve, Wells Fargo agreed to the

entry of a consent order ("the Consent Order").  Exhibit A, Dkt. No. 60.   In

those proceedings, the federal regulators alleged that Wells Fargo had

engaged in prohibited, sharp lending practices in making loans to its

borrowers between  2006 and 2008.  In particular, it was alleged that Wells

Fargo had diverted otherwise qualified borrowers away from "prime"

loans, into more expensive "nonprime" loans, to their financial detriment.

Wells Fargo denied it had acted improperly, and through the terms of the

Consent Order, the dispute was settled.  Among other actions, the Consent

Order required Wells Fargo to identify those borrowers who may have

been injured as a result of taking out nonprime loans during the relevant

---

[4] It is unclear in the record whether Wells Fargo actually foreclosed on the
home.

MEMORANDUM OF DECISION – 4

time window, and to offer them what the Consent Order referred to as

"restitution" or "remedial compensation."  Consent Order at 5.[5]

Apparently, Debtors were identified by Wells Fargo as borrowers

entitled to a compensatory payment under the Consent Order.  After

learning that Debtors may be entitled to a payment under the Consent

Order,[6] in April 2015, the U.S. Trustee filed a motion to reopen Debtors'

bankruptcy case and to appoint a trustee to administer Debtors'

settlement claim, which had not been listed in Debtors' schedules.  Dkt.

No. 43.  The Court granted the motion, reopened the bankruptcy case, and

Trustee was appointed.  Dkt. Nos. 44, 45.

On July 31, 2015, Trustee filed a motion to approve a compromise

between Wells Fargo and the bankruptcy estate.  Mot. to Approve

Compromise, Dkt. No. 50.  In the motion, Trustee sought authority to

accept Wells Fargo's offer to pay him $8,120.23 (the "Payment") pursuant

---

[5]  The Consent Order also required Wells Fargo to pay a "civil money penalty" to the government of $85 million.  Consent Order at 5.

[6] Motion to Reopen at ¶ 5.  It is unclear how the U.S. Trustee first learned about the Consent Order.

MEMORANDUM OF DECISION – 5

to the Consent Order in exchange for his execution of an "Acceptance of Compensation and Release" releasing Wells Fargo from any potential claims arising from its loan to Debtors. *Id.* at 2-3 and Exhibit A; Trustee Status Report at ¶¶ 2-3, Dkt. No. 49.

Debtors objected to the compromise motion, arguing that, because the Consent Order was entered post-bankruptcy, the Payment from Wells Fargo under the Consent Order was not property of the estate. Thus, they urged, Trustee was not entitled to settle any claim against Wells Fargo and the compromise motion should be denied. Obj. to Mot. to Approve Compromise at 1-2, Dkt. No. 53.

At a hearing on September 15, 2015, the Court granted the motion and approved the compromise with Wells Fargo. However, in doing so, the Court allowed the parties to reserve their rights to thereafter ask the Court to determine if the Payment was property of the estate, and required Trustee to hold the Payment in trust until the Court resolved whether it was property of the bankruptcy estate. *See* Min. Entry, Dkt. No. 55; and Order Granting Mot. to Approve Compromise, Dkt. No. 56 at ¶ 2. The

MEMORANDUM OF DECISION – 6

parties then submitted the Joint Motion.  Dkt. No. 60.

### *Issue*

To resolve the Joint Motion, the Court must decide whether the

Payment received by Trustee from Wells Fargo in accordance with the

post-bankruptcy Consent Order to resolve claims arising from Wells

Fargo's prebankruptcy lending practices is property of the estate.   The

Court concludes that the Payment is indeed property of this bankruptcy

estate for the reasons that follow.

### *Analysis and Disposition*

### I.

As a general rule, the Code provides that the bankruptcy estate

consists of "all legal or equitable interests of the debtor in property as of

the commencement of the case".  § 541(a)(1).  "The scope of the bankruptcy

estate is extremely broad, including both tangible and intangible

property."  *In re Pogrom*, 395 B.R. 692, 695 (Bankr. D. Idaho 2008) (citing

*United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983).  But, the scope

of the estate is not so broad as to "expand a debtor's rights in property

MEMORANDUM OF DECISION – 7

over what existed as of the date of filing." *Id.* (quoting *Farmers Ins. Group v. Krommenhoek (In re Hiatt)*, 00.3 IBCR 131, 132 (Bankr. D. Idaho 2000).

Despite the temporal limitation in § 541(a)(1), property of the estate also includes certain kinds of property coming into existence after bankruptcy.  For example, the estate will also include "[p]roceeds, product, offspring, rents, or profits from property of the estate" and "any interest in property that the estate acquires after the commencement of the case." § 541(a)(6), (a)(7).

"According to the legislative history of [§ 541(a)(6)], 'proceeds' is not to be defined as narrowly as in the Uniform Commercial Code."  *In re Hyman*, 123 B.R. 342, 346 (9th Cir. BAP 1991) *aff'd*, 967 F.2d 1316 (9th Cir. 1992) (citing S.Rep. No. 989, 95th Cong.2d Sess. 82, (1978); H.R.Rep. No. 595, 95th Cong. 1st Sess. 368 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5868, 6323).  The result is a meaning that is "exceedingly broad." *Id.* (citing *In re Calder*, 94 B.R. 200, 201 (Utah 1988).

Furthermore, "Congress enacted § 541(a)(7) to clarify its intention that § 541 be an all-embracing definition and to ensure that property

MEMORANDUM OF DECISION – 8

interests created with or by property of the estate are themselves property of the estate." *MacKenzie v. Neidorf*, 534 B.R. 369, 372 (9th Cir. BAP 2015) (quoting *TMT Procurement Corp. V. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 524-25 (5th Cir. 2014) and citing H.R. Rep. 95-595, 549, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6455 & 6523-24). Property acquired by the estate after commencement of the bankruptcy case is included in the estate under § 541(a)(7) if it was created with or by property of the estate; acquired in the estate's normal course of business; or is otherwise traceable to, or arises out of, any prepetition interest included in the bankruptcy estate. *Id.* at 372 (citations omitted).

As the party arguing that the Payment is property of the estate, Trustee bears the burden of proof. *Id.* (citations omitted).

## II.

Trustee argues that the Payment was made to him by Wells Fargo in accordance with the Consent Order, to compensate Debtors as borrowers who were subjected to Wells Fargo's prebankruptcy sharp lending practices. Because any claim by Debtors against Wells Fargo would have

MEMORANDUM OF DECISION – 9

arisen in 2007 when they received the loan, that claim would constitute property of the estate under § 541(a)(1).  Since the Payment effected by the Consent Order was clearly intended as compensation for Debtors' claim, the Payment is also property of the estate under § 541(a)(7).  To support his characterization of the purpose for the Payment, Trustee points out that, as a condition of his receipt of the Payment, and with the approval of the regulators, Wells Fargo required Trustee to release the lender from "any and all claims relating to [Wells Fargo's] origination of a more expensive mortgage loan [to Debtors] that the loan for which [they] potentially qualified."  Acceptance of Compensation and Release at 2, Dkt. No. 50 Exh. A; Trustee's Memo. at 2-4, Dkt. No 64.

Debtors contest Trustee's attempts to tie the Payment to prebankruptcy events.  Instead, Debtors argue that the Payment is not property of the estate because any right to receive it arose solely as a result of the 2011 Consent Order, which was entered long after their 2009 bankruptcy case was commenced.  They note that there is no evidence that Wells Fargo in fact engaged in any wrongful conduct regarding their

MEMORANDUM OF DECISION – 10

particular loan.  Debtors' Memo at 4, Dkt. No. 63.  In effect, Debtors argue

that they are merely the indirect beneficiaries of the government's

regulatory action, and they analogize these facts to those in cases involving

the post-bankruptcy enactment of legislation bestowing cash and other

benefits upon debtors, like fishermen and farmers, which rights or cash

awards the courts have decided were not property of the debtors'

bankruptcy estates.  *Id.* at 3-4 *citing In re Schmitz*, 270 F.3d 1254 (9th Cir.

2001)*; In re Vote*, 276 F.3d 1024 (8th Cir. 2002).

### III.

While the case law admittedly requires a close reading, the Court

concludes Trustee's position is the correct one.

The Consent Order and release documents make clear that the

Payment was intended to constitute compensation for any financial

detriment Debtors may have suffered as the result of having taken out a

nonprime loan from Wells Fargo in 2007, when they may have been

eligible for a cheaper, prime loan.  Put another way, the Payment was

intended to discharge any claim Debtors may have held against Wells

MEMORANDUM OF DECISION – 11

Fargo as a result of the loan transaction, a claim that would have existed at

the time of their bankruptcy filing.

In addition to the compensatory nature of the Payment, the role

played by the release is a critical factor in the Court's analysis in this case.

Because Trustee was required to release potential claims against Wells

Fargo in order to receive the Payment, if the Payment was property of the

estate, the Payment is likewise property of the estate pursuant to either

§ 541(a)(6) or § 541(a)(7).

**A.**

"Legal causes of action are included within the broad scope of

§ 541." *In re Goldstein*, 526 B.R. 13, 21 (9th Cir. BAP 2015) (citations

omitted). This is true "even if the debtors were unaware of the claim when

they filed for bankruptcy protection." *In re Michael*, 423 B.R. 323, 330

(Bankr. D. Idaho 2009). Also, a later recovery on a claim is

derivative of the cause of action and therefore also property of the estate.

*In re Brown*, 363 B.R. 591, 605 (Bankr. D. Mont. 2007) (citing *In re Smith*, 293

B.R. 786, 788 (Bankr.D.Kan.2003); *In re Ballard*, 238 B.R. 610, 624 (Bankr.

MEMORANDUM OF DECISION – 12

M.D. La. 1999).

The Consent Order explains the regulators' contentions concerning Wells Fargo's lending practices.  It alleges that it was Wells Fargo knowingly diverted borrowers away from the prime loans for which they may be qualified, and into more expensive and onerous nonprime loans,[7] without informing them of what was occurring.  Consent Order at 4-5. The Consent Order alleged that Wells Fargo's conduct amounted to "unsafe or unsound banking practices" and constituted:

> [v]iolations of various state laws pertaining to fraud and false
> or misleading statements in home mortgage loan-related
> documents, and to unfair or deceptive acts or practices.

*Id.* at 5.

It is true that, as Debtors point out, in its agreement for entry of the Consent Order, Wells Fargo was not required to admit any specific wrongdoing, and there is no evidence in the record that, in particular, Debtors' transaction with Wells Fargo was tainted by Wells Fargo's

---

[7] Nonprime loans were offered to less-qualified borrowers at higher interest rates allegedly to offset the increased risk of nonpayment.

MEMORANDUM OF DECISION – 13

alleged unlawful conduct.[8]  Even so, that Debtors qualified for payment

under the Consent Order is evidence that they received a nonprime loan

when they were eligible for a prime loan,[9] and that they did so to their

financial detriment.[10]  This, coupled with the fact that the Consent Order

allowed Wells Fargo to require borrowers eligible to receive payments to

release the lender from any possible claims described in the factual

allegations,[11] persuades the Court that Debtors held a cause of action

---

[8] Consent Order at 6 (reciting that its entry was"without this Order
constituting an admission by Wells Fargo . . . of any allegation made or implied
. . . in connection with this matter. . . .").

[9] Consent Order at 17-19 (detailing borrower eligibility for cash
payments).

[10] Consent Order at 17-20 (explaining calculations for remedial
compensation for borrowers who paid interest and experienced damage to their
credit).

[11] It is clear that, through the Consent Order, that Wells Fargo's payments
to borrowers were intended to compensate them for any potential financial
damages they had incurred as a result of borrowing from Wells Fargo, and that
the consideration for the payments was the borrowers' agreement to release
Wells Fargo from any further liability on account of its actions.  *See* Consent
Order p. 21 (explaining that Wells Fargo was required to provide specimen
copies of letters that will specify information or documents that borrower must
provide in order to obtain the remedial compensation, including an appropriate
form of release); Acceptance of Compensation and Release at 1-2, Dkt. No. 50.

MEMORANDUM OF DECISION – 14

against Wells Fargo based upon the loan transaction, even if that claim

was only potential or disputed.

**B.**

"To determine when a cause of action accrues, and therefore

whether it accrued pre-bankruptcy and is an estate asset, the Court looks

to state law." *Goldstein*, 526 B.R. at 21 (citations omitted).  Here, a cause of

action for violation of the Idaho Consumer Protection Act would have

accrued when the Debtors' loan was originated.  *See* Idaho Code § 48-

608(1) (providing that accrual occurs when a person purchases services

and suffers an ascertainable loss that is the result of a practice declared

unlawful by the ICPA[12]); *In re Beach*, 447 B.R. 313, 319 (Bankr. D. Idaho

2011).

A cause of action for fraud, on the other hand, accrues when the

facts constituting the fraud are discovered by the aggrieved party.  Idaho

Code § 5-218(4); *Mason v. Tucker & Associates*, 871 P.2d 846, 852 (Idaho Ct.

---

[12] Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer is unlawful under the ICPA. Idaho Code § 48-603(11).

MEMORANDUM OF DECISION – 15

App. 1994).  However, "it is important to distinguish between accrual of an action for purposes of ownership in a bankruptcy proceeding and accrual for purposes of the statute of limitations." *In re Brown*, 363 B.R. at 605 (citing *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001); *see also In re Endresen*, 530 B.R. 856, 863 (Bankr. D. Or. 2015).  For purposes of determining when a cause of action is property of the estate, a claim accrues when it "could have been brought." *Brown*, 363 B.R. at 605 (citing *Cusano*, 264 F.3d at 947).  Under Idaho law, a claim for fraud accrues only when nine elements are met.[13]  But since even the last of those elements, injury, would have occurred in this case when Debtors began paying the higher rate of interest on the loan, their cause of action for fraud would have accrued prepetition as well.

Therefore, although Wells Fargo disputed it, and it was unknown to

---

[13] "Nine elements must be proved to sustain an action for fraud: (1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) the hearer's right to rely; and (9) consequent and proximate injury." *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 600, 150 P.3d 288, 293 (2006) (citing *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 368, 109 P.3d 1104, 1110 (2005)).

MEMORANDUM OF DECISION – 16

Debtors at the time they filed their bankruptcy petition, as described in the

Consent Order and release documents, Debtors held a potential cause of

action against Wells Fargo arising from its dealings with them in 2007 for

the financial harm they may have suffered as a consequence of borrowing

from Wells Fargo.  Because the potential claims against Wells Fargo

existed at the time Debtors commenced the bankruptcy case, there were

property of the estate under § 541(a)(1).  And, because Trustee was

required to release those claims as a condition of receipt of the Payment,

those funds are also property of the estate either under § 541(a)(6) as

proceeds from the potential causes of action, or under § 541(a)(7), because

the Payment is traceable to, and arose out of, property of the estate.

## IV.

The Court's conclusion is not inconsistent with other case law.

For example, in *Neidorf*, a secured creditor obtained stay relief on a

chapter 7 debtor's home and foreclosed.  *Id.* at 371.  Almost six years later,

MEMORANDUM OF DECISION – 17

while the estate was still open,[14] the debtor received a payment pursuant

to a national settlement between banking regulators and certain financial

institutions based upon their alleged improper foreclosure practices.  *Id.*

The chapter 7 trustee filed a motion for turnover of the payment arguing

that it was property of the estate pursuant to § 541(a)(7) because the

payment arose from the debtors prepetition interest in the residence that

was the subject of the foreclosure.  *Id.*  In holding that the payment was not

property of the estate, the BAP stated:

> Here, Trustee has not shown how the bankruptcy estate
> acquired an interest in the postpetition Foreclosure Payment.
> *The payment was neither created with or by property of the estate*
> *nor can it be said that the payment is traceable to or arose out of any*
> *prepetition interest included in the bankruptcy estate.* The fact that
> Debtor's Residence became property of the estate, in and of
> itself, does not support the inclusion of the Foreclosure
> Payment as after-acquired property under § 541(a)(7).  Rather, Debtor
> became entitled to the payment only as a result of qualifying events
> occurring after her bankruptcy filing.

> Debtor's legal right to, or interest in, the Foreclosure Payment
> was as a "borrower," and did not arise until [the consent
> order was entered]. . . .  Under the [consent order] only

---

[14] The trustee had kept the estate open to collect on an unsecured note.
*Neidorf,* 534 B.R. at 371.

MEMORANDUM OF DECISION – 18

borrowers who had a pending or completed foreclosure on
their primary residence any time from January 1, 2009, to
December 31, 2010, were eligible to receive distributions from
the QSF.  In other words, it was the postpetition [consent
order] which created the rights and remedies for the specified
class of borrowers.

*Nowhere has Trustee shown how the estate obtained an interest in
the Foreclosure Payment itself when the qualifying events giving
rise to Debtor's legal rights to the payment all occurred postpetition
and were held solely by the borrowers. See Drewes v. Vote (In re
Vote), 276 F.3d 1024 (8th Cir.2002).*

*In re Neidorf*, 534 B.R. 369, 372 (B.A.P. 9th Cir. 2015) (emphasis added).

Here, in order to receive the Payment, Trustee was required to

execute a release of the potential claims that had inured to the estate as of

the filing of the petition.  Because of this, Trustee has shown, as the trustee

in *Neidorf* could not, that the Payment is traceable to and arose from a

prepetition interest in the bankruptcy estate.  Moreover, the post-

bankruptcy Consent Order alone did not create Debtors' right to the

Payment.  While the Consent Order provided a framework to identify the

parties eligible for the payment, and how to calculate those payments,

Trustee did not have a right to the payment until he released the estate's

MEMORANDUM OF DECISION – 19

potential claims against Wells Fargo.  The release further evidences that

the Payment is proceeds from the potential causes of action, and the right

to the Payment arose from Debtors' prepetition interest in the potential

causes of action.  *Neidorf* is distinguishable.

The release requirement in this case also differentiates it from *In re*

*Vanwart*, 497 B.R. 207 (E.D.N.C. 2013).  In *Vanwart*, the debtors received a

payment pursuant to a consent order entered postpetition against a lender

who had attempted to foreclose on the residence prepetition.  In holding

that the payment was not property of the estate, the bankruptcy court

stated that:

> Although the debtors' qualification to receive the payment is
> based upon the first foreclosure action . . . the payment was
> not sufficiently rooted in that action as to render the payment
> property of the estate.  While a bankruptcy estate includes
> "causes of action" belonging to the debtor at the time the case
> is commenced, *In re Hamlett*, 304 B.R. 737, 740
> (Bankr.M.D.N.C.2003), that analysis is inapplicable here
> because there is no indication that the debtors were
> wrongfully foreclosed upon or have some other cause of
> action against SunTrust Mortgage.  The 2013 consent order
> and the letter the debtors received with the payment explicitly
> state that the payment is in no way an admission of liability or
> wrongdoing on SunTrust Mortgage's behalf, *nor does*

MEMORANDUM OF DECISION – 20

> acceptance of the payment by the debtors foreclose their ability to
> bring a cause of action against SunTrust Mortgage. Furthermore,
> the foreclosure action which made the debtors eligible . . . was
> voluntarily dismissed without prejudice.  The actual
> completed foreclosure . . . did not occur within the dates
> targeted by the enforcement action . . . . Neither of the
> foreclosure actions have been alleged to have been deficient in
> any manner.

*Vanwart*, 497 B.R. at 212 (emphasis added).  While the Consent Order in

this case is also not an admission of any wrongdoing by Wells Fargo,

unlike in *Vanwart*, Trustee was indeed required to release any potential

claims against the lender to obtain the Payment.  In contrast, the consent

order in *Vanwart* stated, "In no event shall [lender] request or require any

borrower to execute a waiver of any claims against [lender] in connection

with any payment [provided pursuant to] this Order."  *Id.* at 210.   Because

a release was required here, *Vanwart* is also inapposite.

     Finally, *Schmitz* and *Vote* do not help Debtors.  As the Ninth Circuit

BAP observed in *Goldstein*,[15] "[i]n both cases, the rights under review, crop

---

     [15] In *Goldstein*, the BAP held that debtors' claim against its mortgage
lender was a prepetition cause of action even though the judicial decisions
recognizing debtors' right to assert that cause of action were issued postpetition.
526 B.R. 13.

MEMORANDUM OF DECISION – 21

disaster assistance and fishing rights . . . were created postpetition by

legislation enacted postpetition.  *In re Vote* 261 B.R. at 442; *In re Schmitz*, 270

F.3d at 1255-56."  526 B.R. at 23.  For example, while the fishing quota

rights in *Schmitz* were based on the Debtor's pre-filing catch history, it was

not until the regulations were promulgated postpetition that fishermen

obtained any future fishing quota rights.  *Schmitz*, 270 F.3d at 1255.

Because of this, the Ninth Circuit reasoned, "as of the date of the petition,

Schmitz's [prepetition] catch history had no value."[16]

Here, Debtors' claims against Wells Fargo were "based on common

law causes of action and other legislation that were already in place" and

"did not require enactment of new legislation." *Goldstein*, 526 B.R. 23.

Thus, unlike the debtors' fishing history in *Schmitz,* or the crop loss in *Vote*,

Debtors' prepetition right to prosecute a claim against Wells Fargo had

value and was property of the estate.  As such, when Trustee was required

to release that right in exchange for the Payment, the Payment became part

---

[16]  The 8th Circuit BAP similarly explained in *Vote* that, "[w]e have found
no case in which a pure loss with no attendant potential benefit was included as
property of the estate." *Vote*, 276 F.3d at 1027.

MEMORANDUM OF DECISION – 22

of the estate.  In other words, "both [ *Schmitz* and *Vote* are factually and legally distinguishable."[17]  *Id.*

### *Conclusion*

While the issue is a close one, for these reasons, the Court concludes that the Payment is property of the estate.  The parties shall submit an approved form of order for entry by the Court.

Dated:  March 10, 2016

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[17] While not cited by Debtors, for these same reasons, the decisions in *Burgess v. Sikes (In re Burgess)*, 438 F.3d 493, 499 (5th Cir. 2006), and *Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234 (11th Cir. 2006) are also distinguishable.

MEMORANDUM OF DECISION – 23